## Blattenberger *versus* Holman.

One who, with full knowledge of the fraudulent character of a policy of life insurance, which was designed for speculative purposes, and without having any insurable interest in the insured, purchases an assignment of such policy, for a valuable consideration, cannot, upon the failure of the company to pay the claim after the death of the insured, invoke the aid of the courts to recover back from his fraudulent assignor the consideration so paid for the assignment.

May 9th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Perry county:* Of January Term 1883, No. 400.

Assumpsit, by John K. Blattenberger against M. B. Holman, to recover back the sum of $350, paid by plaintiff to defendant for the assignment of a policy of life insurance on the life of Mary Owen.

On the trial, before BARNETT, P. J., the plaintiff testified that on June 14th 1881, he bought the policy in question from the defendant, to whom it had been assigned April 1st 1881, by S. E. Klinger, the beneficiary named therein; that Holman said the claim was all right, and the company would assess on it. Mary Owen was then dead, and the plaintiff and Holman both knew it, but Holman had not filed a death proof. "His reason for not filing it was that he was a member of the legislature, and could not attend to it at that time."

On cross-examination, the plaintiff testified that he was in the speculative life insurance business as a business; that he

[Blattenberger *v.* Holman.]

had taken out several policies on the life of said Mary Owen, in different companies, about January or February 1881, by arrangement with S. E. Klinger, a distant relative of Mary Owen; plaintiff said he knew she was a good risk—one who would drop off soon. She was then 84 years of age, and she died April 19th 1881. The policy in question was in the Lochiel Insurance Company, of Harrisburg, of which said Holman was an agent.

Further extracts from the plaintiff's testimony are given in the opinion of this court.

H. C. Hoveter, who was secretary of the Lochiel Insurance Company, and a director and member of the executive committee at the time the application was made for the policy in question, testified that he was informed, before the delivery of the policy, by the physician who examined Mary Owen, that he had made the examination simply as a personal favor for some one, and that the company should not issue the policy. The president of the company was informed of this, but no investigation was then made of the facts; the policy was delivered, and the secretary, after Mary Owen's death, told Mr. Holman that he would do all in his power to forward his interests in this claim by bringing the matter before the board, and having an assessment made for the claim. Two assessments were in fact levied, one on May 15th and one on June 1st 1881; but while they were in process of collection, and soon after the date of the assignment to plaintiff, the company "broke up."

Plaintiff, in several offers, offered to prove that defendant at the time of the assignment knew that the policy in question was fraudulent and void, having been issued for speculative purposes on a forged application; and that the company had refused to pay the claim on demand made by plaintiff.

Objected to; objections sustained; exception.

At the close of the plaintiff's case the court entered a compulsory non-suit, which the court subsequently refused to take off, whereupon the plaintiff took this writ of error, assigning for error the rejection of his offers, and the refusal of the court to take off the non-suit.

*B. F. Junkin* ( *W. N. Seibert* with him), for the plaintiff in error.—The case should have been submitted to the jury on the question of fraud by the defendant in asserting that the claim was all right, when he knew it was all wrong. The defendant warranted the title to the policy.

*W. H. Sponsler* and *W. A. Sponsler*, for the defendant in error.

[Blattenberger *v.* Holman.]

Mr. Justice Paxson delivered the opinion of the court, October 1st 1883.

The defendant was the holder of a policy of insurance on the life of Mary Owen, issued by the Lochiel Insurance Company of Harrisburg. One S. E. Klinger was the beneficiary named in the policy. Klinger transferred the policy to the defendant, who in turn assigned it to the plaintiff for the consideration of $350. Upon the death of the assured the plaintiff brought this suit to recover from the defendant the money paid for the assignment, upon the ground that the policy had been obtained from the company under such circumstances of fraud that the company declined to pay. The court below, after rejecting several offers of evidence on the part of the plaintiff, directed a non-suit, which, with the rejection of the offers of evidence, is assigned for error.

The entire case is so saturated with fraud that its presence in this court is offensive. The company which issued the policy was one of those unfortunate excrescences on the insurance system, which sprung up in a night only to be swept away by the attorney-general. The transaction out of which this suit grew was a speculation upon the life of a decrepit woman, eighty-four years of age, who was on her death bed when the policy was issued. The application was dated March 26th 1881; the assured died April 19th 1881. The policy was not only worthless because of the fraud set forth in the plaintiff's offer, but was wholly invalid because taken out for speculative purposes, and by parties who had no insurable interest in the life of Mary Owen. See Gilbert *v.* Moose, decided at the present term, in which this subject is discussed and the authorities cited by our brother Gordon.

The plaintiff, as assignee of the policy, claims to recover upon the implied warranty of title. It is settled law, that one who sells a note, bond or other chose in action impliedly warrants not only the title thereto, but the validity thereof and the right to recover thereon: Flynn *v.* Allen, 7 P. F. S. 485; Lyons *v.* Divelbis, 10 Harris 185.

If, therefore, the plaintiff took this assignment in ignorance of the true character of the transaction, he is entitled to recover back the money paid therefor. But his own testimony shows that he was as deep in the fraud as any of the others. It appears that he was a recognized agent of this and other companies of like character and was engaged in what he naively terms "the speculative life insurance business as a business." It also appears this was only one of several policies which he held on this same woman. His testimony is so remarkable that I give it at some length:

"I bought a policy from Mr. Holman, No. 581, in the Lo-

[Blattenberger *v.* Holman.]

chief of Harrisburg on the life of Mary Owen. S. E. Klinger was the original beneficiary. It was assigned by Klinger April 1st 1881, to Mr. Holman. I bought the policy from Mr. Holman for $350. . . . He said the claim was all right, and the company would assess. The subject was then dead, but he had not filed a death proof. His reason for not filing it was that he was a member of the legislature and could not attend to it at that time. Holman assigned to me June 14th 1881. . . . I owned other policies of insurance on this same subject; probably interested in four or five. . . I took out my first policy on Mary Owen in latter part of January or first of February 1881. About all I had on her I took out at the same time. S. E. Klinger was the beneficiary in these policies. I obtained the policy by an assignment from S. E. Klinger. We first took out the applications; they were all signed on the same day, because I was at Mary Owen's only the one time. Her condition, when I was there, was a desirable condition for speculative purposes. . . . I was in the speculative life insurance business as a business. . . . I knew she was a good risk—one who would drop off soon. She was 84 years of age. I knew she was a favorable risk. It was part of the history of life insurance, that whenever an old, decrepit and favorable risk was known, speculators took out as many policies as they could on such risk. . . . I took out all my applications on said subject (Mary Owen) on the same day, 31st January 1881. She signed them all on the same day; I did not send them to the respective companies all on the same day of the application. I sent them in accordingly as I sold them to different parties."

In view of this statement by the plaintiff he cannot justly claim to be an innocent assignee of the policy. It is true, he may not have known that the signature of the assured was a forgery, if the fact be so; but he did know that it was a speculative policy, issued to one who had no insurable interest in the assured, excepting in her death. Such transactions are against the policy of the law. They lead to murder.

The plaintiff bought a worthless thing, knowing it to be worthless. He perhaps supposed that owing to his connection with the company, the latter would assess the loss and pay. Be that as it may, he certainly knew that if he got his money some one would be cheated. In doing this the law will not aid him.

We are clearly of opinion that the learned judge below committed no error when he rejected the plaintiff's evidence and directed a non-suit.

Judgment affirmed